**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA**

        vs.                      **CASE NO: 8:18-cr-00345-T-17AEP**

**JHONY MIGUEL DE LA CRUZ AGUINO**
_____/

**DEFENDANT JHONY MIGUEL DE LA CRUZ AGUINO'S**
**SENTENCING MEMORANDUM AND MOTION FOR VARIANCE**

Defendant, Jhony Miguel De La Cruz Aguino, by and through the undersigned counsel, hereby files this Sentencing Memorandum and respectfully moves for a variance from the sentence recommended by the United States Sentencing Guidelines, and states as follows:

**I.    INTRODUCTION**

The Defendant, Jhony Miguel De La Cruz Aguino, will be before the Court for sentencing on Friday, February 22, 2019. The Presentence Report ("PSR") as calculated yields a guideline score of 168 to 210 months of imprisonment. Mr. De La Cruz Aguino seeks a variance based his personal circumstances and the facts of the case. The following is a brief summary of Mr. De La Cruz Aguino's position before the Court:

**II.    PERSONAL BACKGROUND AND RELEVANT HISTORY**

Mr. De La Cruz Aguino was born in Esmeraldas, Ecuador, on September 13, 1992, and is twenty-six (26) years old. He had a difficult childhood full of abuse and homelessness. His parents separated when he was young, and his father remarried his stepmother, Flor Nazareno Borjas. Mr. De La Cruz Aguino's mother, Margarita Aguino Oreguela, died suspiciously at a young age and it was rumored his stepmother was involved in her death, although never proven. Mr. De La Cruz Aguino's stepmother was abusive from the start and often beat him and his siblings with a belt. He will forever be reminded of her abuse due to

1

a deep scar on the bridge of his nose resulting from one of the many beatings. His father worked long hours as a fisherman so Mr. De La Cruz Aguino was often left with his stepmother. He eventually left the home around the age of sixteen (16) and lived on the streets to avoid further abuse at the hands of his stepmother.

Following the death of his mother, he was depressed and had no desire to study or attend school. He started hanging out with the wrong crowd and experimenting with drugs and alcohol. As he got older and had children, he realized he needed to provide for his family and chose to follow in his father's footsteps and become a fisherman. He worked long hours and tried his best to support his family but could not make ends meet. He would sometimes go weeks without pay due to poor fishing conditions. Immediately prior to Mr. De La Cruz Aguino's arrest, he could not provide for his family and was desperate for money. His youngest child was sick, and he could not afford her treatment. Moreover, he and his family were being evicted from their apartment. In desperation, he made the decision to participate in the criminal activity which ultimately led to his position before the Court. Since arrest, he has been depressed and contemplated suicide.

With regard to the current charges, on July 13, 2018, Mr. De La Cruz Aguino, along with two (2) codefendants, were detained by the United States Coast Guard after cocaine was discovered aboard their vessel. On July 26, 2018, Mr. De La Cruz Aguino was indicted for conspiracy to distribute and possession with the intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 46 U.S.C. sections 70503(a) and 70506(a) and (b), and Title 21 U.S.C. sections 906(b)(1)(B)(ii). [Dkt. #1]. Mr. De La Cruz Aguino was arraigned on August 2, 2018, and detention was ordered. [Dkt. #23].

2

Mr. De La Cruz Aguino was one of the first defendants to enter a plea in this matter [Dkt. #35], and on October 29, 2018, a change of plea hearing was held before Judge Porcelli. Mr. De La Cruz Aguino pleaded guilty to Count I of the Indictment charging conspiracy to possess with the intent to distribute five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 46 U.S.C. sections 70503(a) and 70506(a) and (b), and Title 21 U.S.C. sections 906(b)(1)(B)(ii). On January 15, 2019, the Defendant filed a Motion for Sentence Below the Statutory Mandatory Minimum Pursuant to the Safety Valve Provision of the First Step Act, or in the Alternative, to Reaccept Guilty Plea or Allow Defendant to Withdraw the Guilty Plea. [Dkt. #75]. The government filed a response on January 22, 2019. [Dkt. #77]. The Court has yet to rule on the motions.

### III. SENTENCING GUIDELINES

The PSR, applying the 2018 Guidelines Manual, calculated a Total Offense Level of 35 resulting in an advisory range of 168-210 months incarceration. Mr. De La Cruz Aguino's criminal history category is I. He received a two-level reduction for acceptance of responsibility; however, received an increase of two-levels because he was the captain of the vessel. Defendant contends he has met all five criteria for the safety valve reduction under the sentencing guidelines, USSG §§ 2D1.1(b)(18) and 5C1.2(a)(1)-(5), and that those same five criteria apply for safety valve relief from the statutory mandatory minimum under 18 U.S.C. § 3553(f). Accordingly, Mr. De La Cruz Aguino respectfully requests he be sentenced below the statutory mandatory minimum pursuant to Section 402 of the First Step Act.

## IV. MOTION FOR VARIANCE

Due to the nature and circumstances surrounding the incident and the personal history and circumstances of Mr. De La Cruz Aguino, he respectfully requests this Honorable Court impose a sentence below his advisory guideline range.

As this Court is well aware, a United States District Court is no longer limited by the guidelines since the matrix is merely considered advisory. United States v. Booker, 543 U.S. 220, 245-267 (2005). The United States Supreme Court in Booker gave judges the flexibility to use the sentencing range produced by the Guidelines as a "starting point" or "initial bench mark." Gall v. United States, 552 U.S. 38, 49 (2007).

Moreover, in United States v. Talley, 431 F.3d 784 (11th Cir. 2005), the Eleventh Circuit adopted a two-step procedure that district courts should follow when fashioning a sentence in the post-Booker, advisory Sentencing Guidelines era. "First, the district court must consult the Guidelines and correctly calculate the range provided by the Guidelines." Id. at 786. Second, the district court must consider the following ten factors: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; 2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; 3) the need for deterrence; 4) the need to protect the public; 5) the need to provide the defendant with needed educational and vocational training or medical care; 6) the kinds of sentences available; 7) the Sentencing Guidelines range; 8) pertinent policy statements of the Sentencing Commission; 9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to the victims. Id. See also 18 U.S.C. §3553(a). "The weight to be accorded any given §3553(a) factor is a matter committed

to the sound discretion of the district court." <u>United States v. Williams</u>, 456 F.3d 1353, 1363 (11th Cir. 2006).

In the instant case, Mr. De La Cruz Aguino cooperated in the investigation and was truthful from the beginning. He was one of the first defendants to take responsibility and enter a plea to the charges. Additionally, Mr. De La Cruz Aguino is a category I offender and the facts of this case are absent of any violence. The length of time a defendant was a law-abiding citizen before committing his or her first criminal offense is an important factor in sentencing. *See, e.g.*, <u>United States v. Ward</u>, 814 F. Supp. 23, 24 (E.D. Va. 1993) (granting departure based on defendant's age as first-time offender since guidelines do not "account for the length of time a particular defendant refrains from criminal conduct" before committing his first offense).

Mr. De La Cruz Aguino submits that a sentence below the guideline range is appropriate and reasonable and would afford adequate deterrence. This incident was nonviolent, Mr. De La Cruz Aguino's criminal history category is I, and he took immediate responsibility for his conduct. A sentence below the guideline range would accomplish the goals of §3553(a) and reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

Should Mr. De La Cruz Aguino be sentenced to a term of imprisonment, he would like to continue his education and learn English. Moreover, he wishes to learn a trade and is interested in cooking, becoming a tailor, or working in a factory.

V. **CONCLUSION**

Based on the circumstances set forth above, a variance from the advisory guideline range should be considered in this case. It is respectfully suggested that the Court should exercise its discretion and impose a sentence below the advisory guideline range.

DATED this 11th day of February, 2019.

Respectfully submitted,

*/s/ Vanessa L. Albaum*
Vanessa L. Albaum
The Law Firm of Vanessa L. Albaum, PLLC
Florida Bar No. 90849
vanessa@vlalegal.com
146 2nd St. N., Ste 310-C
St. Petersburg, Florida 33701
P: (727) 560-2410
(F): (727) 265-1865

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically with the Clerk of the Court using the CM/ECF system which will automatically transmit an electronic copy to:

**AUSA Thomas Palermo**

By: <u>*/s/ Vanessa L. Albaum*</u>
Vanessa L. Albaum